**Matthew S. Parmet** (CSB # 296742)
matt@parmet.law
**PARMET PC**
340 S. Lemon Ave., #1228
Walnut, CA 91789
phone   713 999 5228
fax       713 999 1187

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| JOSEPH MORSA, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>vs.<br><br>TAYLOR UNDERGROUND, INC.,<br><br>       Defendant. | Case No. 5:20-01035<br><br>**Plaintiff's Original Class And Collective Action Complaint for Damages**<br><br>1. **Failure to pay overtime compensation (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*)**<br>2. **Failure to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Orders)**<br>3. **Failure to provide compensation for missed meal and rest periods (CAL. LAB. CODE §§ 226.7, 512; IWC Wage Orders)**<br>4. **Waiting time penalties (CAL. LAB. CODE § 203)**<br>5. **Violation of Unfair Competition Law (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)** |

## SUMMARY

1.     Plaintiff Joseph Morsa worked for Defendant Taylor Underground, Inc. (Taylor Underground) as a Foreman.

2.     Morsa and other workers like him regularly worked in excess of 8 hours in a day and 40 hours in a week.

3.     But Taylor Underground did not pay Morsa and other workers like him proper overtime pay for all of these hours.

4.     Taylor Underground excluded certain compensable hours Morsa worked from the hours Taylor Underground used to calculate Morsa's pay, thus reducing the number of weekly overtime hours for which it paid Morsa.

5.     Similarly, because Taylor Underground excluded certain compensable hours Morsa worked from his pay, it reduced the number of hours it paid Morsa for work in excess of 8 hours in a day, in excess of 40 in a workweek, and for hours worked in 7 consecutive days as mandated by California law.

6.     Further, Taylor Underground did not provide required meal periods and rest periods to Morsa and other workers like him mandated by California law.

7.     This action seeks to recover the unpaid overtime wages and other damages Taylor Underground owes to Morsa and other workers like him.

### JURISDICTION AND VENUE

8.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.     This Court has original jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

10.     This Court also has supplemental jurisdiction over the state law sub-classes pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Taylor Underground resides in this district.

### PARTIES

**A.     Plaintiff**

12.     Morsa is a resident of Banning, Riverside County, California.

13.     Morsa was employed by Taylor Underground as Foreman from August of 2017 to January of 2020.

14.     Morsa was compensated on an hourly basis.

15.     Morsa was not exempt from the overtime requirements of state or federal law.

16.     Morsa's consent to be a FLSA party plaintiff is attached as Exhibit A.

PARMET PC

17.     Morsa brings this action on behalf of himself and all other similarly situated workers, who were subjected to Taylor Underground's illegal pay practices.

18.     Taylor Underground failed to properly pay Morsa and its other hourly workers the correct overtime premium for all the hours they worked in excess of 8 or 12 in a day in violation of California law.

19.     Taylor Underground also failed to properly pay Morsa and its other hourly workers the correct overtime premium for all the hours they worked in excess of 40 in a workweek in violation of the FLSA and California law.

20.     Taylor Underground did not provide these workers with meal and rest periods required by California law.

21.     Morsa seeks a class certification of a class under Fed. R. Civ. P. 23 under the California Labor Code, as follows:

**All hourly workers employed by Taylor Underground in California at any time during the last 4 years who were not paid overtime for all the hours they worked in excess of 8 or 12 hours in a day or 40 hours in a workweek (California Overtime Workers).**

22.     Morsa also seeks a class certification of a class under Fed. R. Civ. P. 23 under the California Labor Code, as follows:

**All hourly workers employed by Taylor Underground in California at any time during the last 4 years who did not receive required meal and/or rest periods (California Meal/Rest Period Workers).**

23.     Morsa also seeks to represent a class of similarly situated employees or putative class members under the FLSA defined as follows:

**All hourly workers employed by Taylor Underground in the U.S. at any time during the last 3 years who were not paid overtime for all of the hours they worked in excess of 40 hours in a workweek (FLSA Workers).**

24.     Morsa, the FLSA Workers, the California Overtime Workers, and the California Meal/Rest Period Workers are referred to collectively as the Hourly Workers.

PARMET PC

**B.     Defendant**

25.     Taylor Underground is California corporation with its headquarters and principal place of business in California.

26.     Taylor Underground's principal office in California is located in this District and Division.

27.     Taylor Underground is a resident of Riverside County, California.

28.     Taylor Underground is a resident of this District and Division.

29.     Taylor Underground can be served with process by serving its registered agent: **Thomas Kyle Taylor, 1133 N. Ramona Blvd., San Jacinto, California 92582**.

**FLSA COVERAGE**

30.     At all relevant times, Taylor Underground has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

31.     At all relevant times, Taylor Underground has been part of an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

32.     At all relevant times, Taylor Underground has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA. 29 U.S.C. § 203(s)(1). Taylor Underground has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as computers, smart devices, office equipment, etc. – that have been moved in or produced for commerce.

33.     In each of the last 3 years, Taylor Underground has had annual gross volume of sales made or business done of at least $500,000.

34.     At all relevant times, Morsa and the Hourly Workers were engaged in commerce or in the production of goods for commerce or were employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

35.     Taylor Underground uniformly dictated the pay practices applied to Morsa and the Hourly Workers.

PARMET PC

**FACTUAL BACKGROUND**

36.     Taylor Underground is an underground pipeline and utitlities contractor.

37.     Morsa worked for Taylor Underground as a Foreman from from August of 2017 to January of 2020 in California.

38.     On a typical work day, Morsa would arrive at Taylor Underground's yard facility in the early morning hours.

39.     Morsa and the members of his crew would then load tools, equipment, supplies, and other materials necessary for the day's work into a Taylor Underground-owned truck.

40.     Morsa would then drive himself and the members of the crew from the Taylor Underground yard to the job site.

41.     The commute from the Taylor Underground yard to the job site was often several hours.

42.     After arriving at the job site Morsa and the crew would then unload the truck and commence the day's work.

43.     At the end of the day's work , Morsa and the crew would then re-load the truck and Morsa would drive himself and the crew on the return trip back to the Taylor Underground yard.

44.     After arriving back at the Taylor Underground yard, Morsa and the crew would typically then unload the truck before going home for the evening.

45.     Morsa would also typically complete paperwork at the Taylor Underground yard before going home for the evening.

46.     As described aboe, Morsa regularly worked in excess of 8 hours per day and even exceeded 12 hours per work on some days.

47.     Morsa also regularly worked in excess of 40 hours per week.

48.     During his entire employment, Taylor Underground paid Morsa by the hour for his working time.

49.     Morsa reported the hours he worked to Taylor Underground on a daily basis.

PARMET PC

50.     Though Morsa reported all of his hours to Taylor Underground, the company refused to count the travel hours between the Taylor Underground yard and the work site as compensable hours and refused to pay Morsa for those hours.

51.     Nevertheless, Taylor Underground was fully aware that Morsa worked more than 8 hours per day and more than 40 hours per week.

52.     Because Taylor Underground refused to count these travel hours as compensable, Taylor Underground consistently failed to properly pay Morsa for hours worked in excess of 8 or 12 in a day.

53.     Similarly, because Taylor Underground refused to count these travel hours as compensable, Taylor Underground consistently failed to properly pay Morsa for hours worked in excess of 40 in a week.

54.     Further, although Morsa regularly worked 10 hours or more in a day, Taylor Underground routinely denied him timely and compliant rest and meal periods and failed to pay Morsa the premium wages he was owed for working through the meal and rest breaks to which he is entitled.

55.     Like Morsa, the Hourly Workers worked for Taylor Underground at various times during the previous 4 years, including and up to the present, and in various locations.

56.     The California Overtime Workers also regularly worked in excess of 8 or 12 hours in a day.

57.     The FLSA Workers and California Overtime Workers also regularly worked in excess of 40 hours per week.

58.     The California Meal/Rest Period Workers also did not receive required meal and rest breaks or premium wages for working through their meal and rest breaks.

59.     The Hourly Workers were paid an hourly rate for their labor.

60.     The Hourly Workers reported the hours they worked to Taylor Underground on a daily basis.

61.     Though the Hourly Workers reported all of their hours to Taylor Underground, the company refused to count the travel hours between the Taylor Underground yard and the work site as compensable hours and refused to pay the Hourly Workers for those hours.

PARMET PC

62.     Nevertheless, Taylor Underground was fully aware that the Hourly Workers worked more than 8 hours per day and more than 40 hours per week.

63.     Because Taylor Underground refused to count these travel hours as compensable, Taylor Underground consistently failed to properly pay the Hourly Workers for hours worked in excess of 8 or 12 in a day.

64.     Similarly, because Taylor Underground refused to count these travel hours as compensable, Taylor Underground consistently failed to properly pay the Hourly Workers for hours worked in excess of 40 in a week.

65.     Further, although the Hourly Workers regularly worked 10 hours or more in a day, Taylor Underground routinely denied them timely and compliant rest and meal periods and failed to pay them the premium wages they were owed for working through the meal and rest breaks to which he is entitled.

66.     Any differences in pay rates and job duties between Morsa and the Hourly Workers are immaterial because Morsa and the Hourly Workers are all victims of the same illegal practices that violate the FLSA and California law.

67.     Taylor Underground knew, or showed reckless disregard for whether, Morsa and the Hourly Workers were working overtime and/or through their meal and rest breaks.

68.     Nonetheless, Taylor Underground failed to properly compensate Morsa and the Hourly Workers for this time.

69.     Thus, Taylor Underground knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA and/or California law.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

70.     Numerous employees have been victimized by this pattern, practice, and policy, which is willful violation of the FLSA and California law.

71.     Many of these Hourly Workers worked with Morsa and reported that they were paid in the same manner and were not properly compensated for all hours worked, as required by the FLSA and California law.

72.     Thus, from Morsa's observations and discussions with these other employees, he is aware that the illegal practices or policies of Taylor Underground have been imposed on a distinct group of employees.

73.     These employees were all paid an hourly rate but were denied all the overtime wages they were entitled to because Taylor Underground refused to count travel time between its yard and the work sites as compensable hours worked.

74.     These Hourly Workers are victims of Taylor Underground's unlawful compensation practices and are similarly situated to Morsa in terms of pay provisions and employment practices.

75.     Taylor Underground's failure to pay wages and overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies and practices, which are not dependent on the personal circumstances of the day rate employees.

76.     Thus, Morsa's experiences are typical of the experiences of the Hourly Workers he seeks to represent.

77.     The specific job titles or precise job locations of these various employees does not prevent collective treatment.

78.     Morsa has no interests contrary to, or in conflict with, the members of the Hourly Workers. Like each member of the proposed classes, Morsa has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

79.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

80.     Absent this action, many Hourly Workers likely will not obtain redress of their injuries and Taylor Underground will reap the unjust benefits of violating the FLSA and California law.

81.     Furthermore, even if some of the Hourly Workers could afford individual litigation against Taylor Underground, it would be unduly burdensome to the judicial system.

82.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

83. The questions of law and fact common to each of the Hourly Workers predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

      a. Whether Taylor Underground employed the Hourly Workers within the meaning of the FLSA and California law;

      b. Whether the Hourly Workers were exempt from overtime;

      c. Whether the travel time hours described above are compensable under the FLSA and California law;

      d. Whether Taylor Underground's decision to not pay overtime to the Hourly Workers for the travel time hours described above was made in good faith; and

      e. Whether Taylor Underground's violation of the FLSA was willful.

84. Morsa's claims are typical of the Hourly Workers. Morsa and the Hourly Workers have sustained damages arising out of Taylor Underground's illegal and uniform employment policy.

85. Morsa knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

86. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

87. All the Hourly Workers, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all hours worked in excess of 40 hours per week. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

### FIRST CAUSE OF ACTION—VIOLATION OF THE FLSA

88. Morsa incorporates each other allegation.

89. Taylor Underground has violated, and is violating, section 7 of the FLSA, 29 U.S.C. § 207, by compensating hourly employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without

PARMET PC

1   compensating the FLSA Class Members for their employment in excess of 40 hours per week at rates

2   no less than 1.5 times the regular rates for all the overtime hours which they were employed.

3       90.     Taylor Underground knowingly, willfully, or in reckless disregard carried out this illegal

4   pattern and practice of failing to pay the FLSA Workers overtime compensation.

5       91.     Taylor Underground's failure to pay overtime compensation to these FLSA Workers

6   was neither reasonable, nor was the decision not to pay overtime made in good faith.

7       92.     Accordingly, Morsa and the FLSA Workers are entitled to overtime wages under the

8   FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and

9   costs.

10      **SECOND CAUSE OF ACTION—FAILURE TO PAY WAGES UNDER CALIFORNIA LAW**

11      93.     Morsa incorporates each other allegation.

12      94.     The California Labor Code requires that all employees, including Morsa and the

13  California Overtime Workers, receive 1.5 times their hourly rate as overtime premium compensation

14  for hours worked over 8 in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through

15  #17-2001.

16      95.     Despite working over 8 hours a day as part of their normal and regular shifts, Morsa

17  and the California Overtime Workers did not receive overtime compensation for all the hours they

18  worked over 8 in one day.

19      96.     The California Labor Code also requires that all employees, including Morsa and the

20  California Overtime Workers, receive 2 times the overtime premium compensation for hours worked

21  over 12 in a day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

22      97.     Although Morsa and the California Overtime Workers sometimes worked over 12

23  hours in one day, they did not receive the "double time" compensation required by California law.

24      98.     The California Labor Code requires that all employees, including Morsa and the

25  California Overtime Workers, receive 2 times the overtime premium compensation for hours worked

26  over 8 in one day, in the seventh day of a workweek. CAL. LAB. CODE §§ 510, 551–52 (2017); IWC

27  Wage Orders #1-2001 through #17-2001.

28

PARMET PC

99.     Although Morsa and the California Class occasionally worked 7 days a week, for at least 12 hours a day, they did not receive the "double time" compensation required by California law for all hours over 8 worked on the seventh day.

100.    This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles Morsa and the California Overtime Workers to recover unpaid balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit pursuant to California Labor Code section 1194.

### THIRD CAUSE OF ACTION—FAILURE TO PROVIDE
### COMPENSATION FOR MISSED MEAL AND REST PERIODS

101.    Morsa incorporates each other allegation.

102.    In accordance with the mandates of California Labor Code sections 226.7 and 512, and applicable IWC Wage Orders, Morsa and the California Meal/Rest Period Workers had the right to take two uninterrupted 30-minute meal periods for each day they worked 10 hours per day and a 10 minute rest period for every 4 hours worked per day. CAL. LAB. CODE §§ 226.7, 512; IWC Wage Orders #1-2001 through #17-2001.

103.    Although the California Labor Code requires that all employees, including Morsa and the California Meal/Rest Period Workers, receive two, 30-minute meal-period breaks when employed for 10 hours per day, Morsa and the California Class did not receive 2 meal-period breaks for each day worked, despite working shifts of 12 hours or more. CAL. LAB. CODE § 512; IWC Wage Orders #1-2001 through #17-2001.

104.    As a pattern and practice, Taylor Underground did not provide Morsa and the California Meal/Rest Period Workers with meal-period breaks, and did not provide proper compensation for this failure as required by California law.

105.    Although the California Labor Code requires that all employees, including Morsa and the California Meal/Rest Period Workers, receive a 10-minute rest period for every 4 hours worked, Morsa and the California Meal/Rest Period Workers did not receive any rest periods during their shifts of 12 or more hours. CAL. LAB. CODE § 512; IWC Wage Orders #1-2001 through #17-2001.

PARMET PC

106.    As a pattern and practice, Taylor Underground did not provide Morsa and the California Meal/Rest Period Workers with rest-period breaks, and did not provide proper compensation for this failure as required by California law.

107.    Morsa and the California Meal/Rest Period Workers are entitled to receive compensation, at their regular rate of pay, of 1 hour for each day they were denied their lawfully required meal- and rest-periods. CAL. LAB. CODE § 512; IWC Wage Orders #1-2001 through #17-2001.

108.    Taylor Underground's policy failed to provide Morsa and the California Meal/Rest Period Workers with the legally mandated meal period breaks. Such a pattern, practice, and uniform administration of corporate policy as described herein is unlawful and creates an entitled to recovery by Morsa and the California Meal/Rest Period Workers in a civil action, for the balance of the unpaid compensation pursuant to Labor Code sections 226.7 and 512, and applicable IWC Wage Orders.

### FOURTH CAUSE OF ACTION—WAITING TIME PENALTIES

109.    Morsa incorporates each other allegation.

110.    At all relevant times, Taylor Underground was required to pay Morsa, the California Overtime Workers, and the California Meal/Rest Period Workers all wages owed in a timely fashion at the end of employment pursuant to California Labor Code sections 201 to 204.

111.    As a result of Taylor Underground's alleged California Labor Code violations, Taylor Underground regularly failed to pay Morsa, and the California Overtime Workers, the California Meal/Rest Period Workers their final wages pursuant to California Labor Code sections 201 to 204, and accordingly Taylor Underground owes waiting time penalties pursuant to California Labor Code section 203.

112.    The conduct of Taylor Underground, in violation of Morsa's, the California Overtime Workers', and the California Meal/Rest Period Workers' rights, was willful and was undertaken by the agents, employees, and managers of Taylor Underground.

113.    Taylor Underground's willful failure to provide Morsa, the California Overtime Workers, and the California Meal/Rest Period Workers the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

114.    Therefore, Morsa, the California Overtime Workers, and the California Meal/Rest Period Workers who have separated from employment are entitled to compensation pursuant to California Labor Code section 203.

**FIFTH CAUSE OF ACTION—VIOLATION OF UNFAIR COMPETITION LAW**

115.    Morsa incorporates each other allegation.

116.    Taylor Underground has engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) overtime wages required under federal law; (2) overtime wages required by California law; (3) meal- and rest-period break wages; (4) accurate wage statements; and (5) waiting time penalties.

117.    The actions described in this Complaint therefore violate California Labor Code Sections 226 (record keeping) and 226.8 (misclassification).

118.    As a result of Taylor Underground's failure to comply with federal and state law, Taylor Underground has also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et. seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

119.    The relevant acts by Taylor Underground occurred within the 4 years preceding the filing of this action.

120.    On information and belief, Taylor Underground has engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, *et seq.*, including those set forth above, depriving Morsa, the California Overtime Workers, and the California Meal/Rest Period Workers of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

121.    Morsa, the California Overtime Workers, and the California Meal/Rest Period Workers are entitled to restitution for at least the following: restitution for unpaid overtime wages and unpaid California Labor Code § 203 continuation wages.

PARMET PC

122.     Morsa, the California Overtime Workers, and the California Meal/Rest Period Workers are also entitled to permanent injunctive and declaratory relief prohibiting Taylor Underground from engaging in the violations and other misconduct referred to above.

123.     Taylor Underground is also liable for fees and costs pursuant to California Code of Civil Procedure section 1021.5 and other applicable law.

**RELIEF SOUGHT**

124.     Morsa prays for judgment against Taylor Underground as follows:

    a.     For an order certifying a class action under Rule 23 for the purposes of the claims under California law;

    b.     For an order certifying this case as a collective action for the purposes of the FLSA claims;

    c.     For an order finding Taylor Underground liable for violations of state and federal wage laws with respect to Morsa and all the Hourly Workers covered by this case;

    d.     For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Morsa and all the Hourly Workers covered by this case;

    e.     For a judgment awarding Morsa and all the Hourly Workers covered by this case their costs of this action;

    f.     For a judgment awarding Morsa and all the Hourly Workers covered by this case their attorneys' fees;

    g.     For a judgment awarding Morsa and all the Hourly Workers covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

    h.     For all such other and further relief as may be necessary and appropriate.

PARMET PC

1    Date:   <u>May 15, 2020</u>

2                                             Respectfully submitted,

3                                                  */s/ Matthew S. Parmet*
                                             By: _____
4                                                  **Matthew S. Parmet**
                                                   (CSB # 296742)
5                                                  matt@parmet.law
6    **PARMET PC**
     340 S. Lemon Ave., #1228
7    Walnut, CA 91789
     phone  713 999 5228
8    fax     713 999 1187

9                                             **Attorneys for Plaintiff**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28